DORSEY & WHITNEY LLP
Bruce R. Ewing (BE-0724)
250 Park Avenue
New York, NY 10177
(212) 415-9200

Juan C. Basombrio (pro hac vice)
38 Technology Drive
Irvine, California 92618
(949) 932-3600

Attorneys for Plaintiffs
*Sofi Classic, S.A. de C.V. and*
*Grupo Industrial Miro, S.A. de C.V.*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ----------------------------------------------------------- X | | |
| SOFI CLASSIC S.A. DE C.V. AND GRUPO INDUSTRIAL MIRO, S.A. DE C.V., | : | Case No. 05 Civ. 9986 (VM) |
| | : | |
| Plaintiffs, | : | **(electronically filed)** |
| | : | |
| v. | : | |
| | : | |
| DAVID HUROWITZ and JAMES LONG, | : | |
| | : | |
| Defendants. | : | |
| ----------------------------------------------------------- X | | |

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS'
## MOTION TO DISMISS

**DORSEY & WHITNEY LLP**
**250 Park Avenue**
**New York, NY 10177**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................... iii

PRELIMINARY STATEMENT ...................................................1

STATEMENT OF FACTS .........................................................2

ARGUMENT ...........................................................................6

POINT I

PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE
RELEASE CONTAINED IN THE SETTLEMENT AGREEMENT ...........................................7

    A.  The Default of MHPG and Four Seasons Renders the Release Null and Void ...............7

    B.  The Election-of-Remedies Doctrine Does Not Bar Plaintiffs' Claims ............................9

POINT II

THE COMPLAINT STATES CLAIMS
AGAINST DEFENDANTS ON AN ALTER-EGO THEORY....................................................11

    A.  The Complaint States a Claim of Alter-Ego Liability Under New York Law ...............12

        1.  Defendants Exercised Domination and Control Over
           MHPG and Four Seasons.........................................................13

        2.  Defendants Used Their Domination and Control Over
           MHPG and Four Seasons to Perpetrate Wrongs Against Plaintiffs.........................14

        3.  Plaintiffs' Allegations Are Not Conclusory............................................15

    B.  The Complaint States a Claim of Alter-Ego Liability Under Massachusetts Law .........17

    C.  The Complaint States a Claim of Alter-Ego Liability Under South Carolina Law ........18

POINT III

THE COMPLAINT STATES CLAIMS FOR FRAUD, BREACH OF FIDUCIARY DUTY,
UNJUST ENRICHMENT ..........................................................18

    A.  The Complaint States a Claim for Fraud ....................................................18

1.  Plaintiffs' Claim for Fraud is Not Duplicative of Their
    Claim for Breach of Contract.....................................................................19

2.  Plaintiffs' Fraud Claim Satisfies Fed. R. Civ. P. 9(b)
    And Is Otherwise Adequately Pleaded ....................................................21

B.  The Complaint States a Claim for Unjust Enrichment ...................................24

C.  The Complaint States a Claim for Breach of Fiduciary Duty........................24

CONCLUSION..........................................................................................................25

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Allied Irish Banks, P.L.C. v. Bank of Amer. N.A., No. 03 Civ.* 3748 (DAB), 2006 WL 278138
(S.D.N.Y. Feb. 2, 2006) .................................................................................................22, 23

*Alter v. Bogoricin*, No. 97-CIV. 0662 (MBM), 1997 WL 691332 (S.D.N.Y. Nov. 6, 1997) ........14

*Austin Powder Co. v. McCullough*, 216 A.D.2d 825, 628 N.Y.S.2d 855 (3d Dep't 1995) ...........17

*Blue Chip Emerald LLC v. Allied Partners Inc.*, 299 A.D.2d 278, 750 N.Y.S.2d 291 (1st Dep't
2002) .........................................................................................................................................25

*Bradbury v. PTN Publications, Inc.*, No. 93-CV-5521, 1998 WL 386485 (E.D.N.Y. Jul. 8, 1998)21

*Bridgestone/Firestone v. Recovery Credit Services*, 98 F.3d 13 (2d Cir. 1996).....................19, 20

*City of New York v. Bronx County Trust Co.*, 261 N.Y. 64, 184 N.E. 495 (1933) .........................9

*Cohen v. Koenig*, 25 F.3d 1168 (2d Cir. 1994)...........................................................19, 20, 21, 22

*Conley v. Gibson*, 355 U.S. 41 (1957) ............................................................................................6

*Deerfield Communications Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 502 N.E.2d 1003
(1986)........................................................................................................................................19

*Doehla v. Wathne Limited, Inc.,* No. 98 Civ. 6087 (CSH), 1999 WL. 566311 (S.D.N.Y. Aug. 3,
1999) ....................................................................................................................................21, 23

*EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508 (S.D.N.Y. 2005) ............16

*Evans v. Multicon Construction Corp.*, 574 N.E.2d 395 (Mass. App. Ct. 1991) ...................17, 18

*Fisher v. A.W. Miller Tech. Sales, Inc.*, 306 A.D.2d 829, 762 N.Y.S.2d 205 (4th Dep't 2003) ....24

*Grunblatt v. Unumprovident Corp.*, 270 F. Supp.2d 347 (E.D.N.Y. 2003) .................................12

*Hunting v. Ellis*, 597 S.E.2d 803 (S.C. Ct. App. 2004) ...............................................................18

*In re Adler, Coleman Clearing Corp.*, 399 F. Supp. 2d 486 (S.D.N.Y. 2005) .......................12, 13

*In re Natural Gas Commodity Litigation*, 358 F. Supp. 2d 336 (S.D.N.Y. 2005)....................6, 22

**Cases**                                                                        **Page(s)**

*International Aircraft Trading Co. v. Manufacturers Trust Co.*, 297 N.Y. 285, 79 N.E.2d 249
(1948).................................................................................................10

*J.P. Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393 (S.D.N.Y. 2004) ...............................23

*Lewyt-Patchogue Co. v. Cantor*, 82 A.D.2d 911, 440 N.Y.S.2d 693 (2d Dep't 1981)...................8

*Lovely Peoples Fashion, Inc. v. Magna Fabrics, Inc.*, No. 95 Civ. 8450 AGS, 1996 WL 732634
(S.D.N.Y. Dec. 19, 1996) ..............................................................................16

*Lumber Mutual Casualty Insurance Co. v. Friedman*, 176 Misc. 703, 28 N.Y.S.2d 506 (Sup. Ct.
N.Y. Co. 1941)......................................................................................10, 11

*Mathias v. Jacobs*, 238 F. Supp. 2d 556 (S.D.N.Y. 2002)..............................................24

*Meinard v. Salmon*, 249 N.Y. 458, 164 N.E. 545 (1928) .............................................24

*Morris v. New York State Department of Taxation and Finance*, 82 N.Y.2d 135, 603 N.Y.S.2d
807 (1993)......................................................................................12, 14, 17

*Moses v. Martin*, 360 F. Supp.2d 533 (S.D.N.Y. 2004) ...........................................12, 13

*Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538 (9th
Cir. 1988) .............................................................................................17

*Pfizer, Inc. v. Stryker Corp.*, No. 02 Civ. 8613 (LAK), 2003 WL 21660339 (S.D.N.Y. Jul. 15,
2003) ..............................................................................................19, 20

*Posner v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 469 F. Supp. 972 (S.D.N.Y. 1979)........16

*Rotella v. Derner*, 283 A.D.2d 1026, 723 N.Y.S.2d 801 (4th Dep't 2001)..........................16, 17

*RNB Garments Philippines, Inc. v. Lau*, No. 98 Civ. 4561 (DLC), 1999 WL 223153 (S.D.N.Y.
Apr. 1999) .............................................................................................16

*Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91 (2d Cir. 1997) .........................23

*Siderpali, S.P.A. v. Judal Industrial, Inc.*, 833 F. Supp. 1023 (S.D.N.Y. 1993) .................9

*Solutia, Inc. v. FMC Corp.*, 385 F. Supp. 2d 324 (S.D.N.Y. 2005)...............................25

*Sultan v. Read*, No. 03 Civ. 7462, 2005 WL 486732 (S.D.N.Y. Mar. 1, 2005) ...........6, 19, 20, 24

*Turnbull v. Kling*, No. 98 Civ. 5925, 1999 WL 672561 (S.D.N.Y. Aug. 26, 1999)...............20, 22

*United States Fire Insur. Co. v. United Limousine Service Inc.*, 303 F. Supp. 2d 432 (S.D.N.Y.
2004) .................................................................................................22

**Cases**                                                                                    **Page(s)**

*WM Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131 (2d Cir. 1991)12, 13

**FEDERAL STATUTES**

Fed. R. Civ. P. 25 ...............................................................................................................1

Fed. R. Civ. P. 12(b)(6).................................................................................................6, 7, 14

Fed. R. Civ. P. 9(b) ......................................................................................................18, 19, 21

## PRELIMINARY STATEMENT

This motion is the latest stage in a long running effort by defendant David Hurowitz ("Hurowitz") to avoid honoring financial commitments made to plaintiffs Sofi Classic, S.A. ("Sofi") and Grupo Industrial Miro S.A. de CV. ("Grupo").  For more than four years, Hurowitz and his now deceased co-defendant James Long ("Long")[1] has strived mightily to avoid paying Plaintiffs more than $2 million owed under a series of contractual agreements.  Late in 2005, Plaintiffs learned, for the first time, that Hurowitz and Long were not merely delinquent in their payment obligations, but that they had engaged in a scheme to defraud Plaintiffs by luring them into a business relationship under false pretenses and by encouraging the perpetuation of that relationship as part of an effort to secure funds from Plaintiffs that would enable Hurowitz and Long to pay off loans to other creditors that the two men had personally guaranteed.  Plaintiffs' aim in this action is to hold Hurowitz and Long to account for the financial obligations they have so long tried to evade.

Not surprisingly, Hurowitz's first impulse is to continue his efforts to avoid paying what he owes by making a motion to dismiss, contending that Plaintiffs' claims are deficient for a variety of reasons.  None of the arguments he advances has any validity, and all should be evaluated against his pattern of refusing to accept any responsibility for his prior wrongdoing.

Hurowitz's first argument is that a release contained in a settlement agreement entered into in 2002 precludes Plaintiffs from asserting their claims, but Hurowitz ignores the fact that the commitments made to Plaintiffs in that agreement were never honored, negating the release in its entirety.  Moreover, the express terms of the agreement and New York law preclude the

---

[1]   Following the commencement of this action, its removal to this Court and service of the Complaint upon Defendants, Long died, in or about December 2005.  Defendants served a Suggestion of Death on January 10, 2006.  Pursuant to Fed. R. Civ. P. 25, Plaintiffs will shortly file a separate motion to substitute Long's personal representative in his place as a defendant in this action.

other arguments Plaintiffs attempt to make regarding this release.  As for Hurowitz's other claims, which focus mostly on alleged pleading violations and Plaintiffs' purported failure to state valid claims, all of these arguments are ultimately insufficient.  As a result, the Court should deny Hurowitz's motion in its entirety and allow this action to proceed.

## <u>STATEMENT OF FACTS</u>[2]

Sofi and Grupo are Mexican manufacturers of garments that are supplied to many prominent U.S. companies.  Complaint, ¶¶ 1-2, 6.  Hurowitz and Long, major shareholders and Presidents of MHPG, Inc. ("MHPG") and Four Seasons Screenprinting, Inc. ("Four Seasons"), respectively, approached Plaintiffs in late 2000 about forming a joint venture between Plaintiffs, on the one hand, and MHPG and Four Seasons, on the other.  *Id.*, ¶¶ 7, 9.

As explained by Hurowitz and Long, the joint venture, which was to be called M-cubed, would manufacture garments and other goods in Mexico for sale in the United States.  They envisioned that Plaintiffs would manufacture the goods in Mexico and ship the goods to MHPG and Four Seasons, with Four Seasons and MHPG selling the goods in the U.S.  Hurowitz and Long represented that the proceeds of such sales would be deposited in a joint checking account, to which representatives of each participant in the joint venture would be signatories, and that these proceeds would be used in the first instance to pay Plaintiffs for their goods.  *Id.*, ¶ 11.  Relying on these representations, Plaintiffs agreed to form the proposed joint venture.  *Id.*, ¶ 10.  The parties likewise proceeded to start the process of forming the legal entity that would be known as M-cubed, but implemented the terms of their joint venture agreement without waiting for M-cubed to be legally established, as time was of the essence.  *Id.*, ¶ 12.

---

2    The following facts are taken from the October 14, 2005 complaint filed in this action (the "Complaint").

Starting in early 2001 and through late 2001, Plaintiffs manufactured garments and shipped them to MHPG and Four Seasons, at the direction of Hurowitz and Long. *Id.*, ¶ 13. These garments were then sold to customers such as The Gap and Old Navy. *Id.* At all times, Hurowitz and Long represented to Plaintiffs that the proceeds of these sales would be used to pay Plaintiffs on the invoices for the goods they had shipped. *Id.* Pursuant to the terms of the joint venture agreement, Plaintiffs shipped over $2 million worth of goods, but the required payments owed to Plaintiffs were not received. *Id.*, ¶ 14. Hurowitz and Long repeatedly assured Plaintiffs that these payment problems were temporary, that MHPG and Four Seasons were financially capable of making the required payments, and that Plaintiffs should continue to ship goods as contemplated by the parties' joint venture agreement. *Id.* Relying on these representations, Plaintiffs did as Hurowitz and Long advocated, sending additional merchandise to the United States for which no payments were ever received. *Id.*

Plaintiffs later learned that when the parties entered into their joint venture agreement, and when Defendants made further representations that the inability of Four Seasons and MHPG to make prompt payments on their invoices was only temporary, Defendants and their companies were in dire financial straits. What Defendants concealed was the fact that that their companies were on the brink of bankruptcy and that proceeds from the sales of the goods shipped to the U.S. by Plaintiffs, rather than being deposited into a joint checking account as Defendants represented, were being automatically routed to pay debts of MHPG and Four Seasons that Defendants had personally guaranteed. *Id.*, ¶¶ 15-18.

In particular, MHPG and Four Seasons owed debts of over $6 million to their lending institutions on a revolving line of credit. *Id.*, ¶ 15. The lending institutions had instituted lockbox arrangements with MHPG and Four Seasons, pursuant to which payments from

customers of MHPG and Four Seasons were sent directly to the lockbox and used by the lending institutions to pay down the line of credit. *Id.* The lending institutions provided MHPG and Four Seasons sufficient funds only to make some payments, continue operations and collect inventory, which was then sold to pay down the line of credit that Hurowitz and Long had personally guaranteed. *Id.*, ¶ 18. Thus, to the extent that payments for goods manufactured and contributed by Plaintiffs to the joint venture were being used to pay down this line of credit, such payments were in fact satisfying personal obligations of Hurowitz and Long. *Id.*, ¶ 20.

Plaintiffs did not know and could not reasonably have known the material fact that MHPG and Four Seasons were in such poor financial condition that they lacked the ability to honor the terms of the parties' joint venture agreement, or that the proceeds of the sales of goods they shipped to the U.S. were being used to pay down the lines of credit personally guaranteed by Hurowitz and Long. *Id.*, ¶ 21. In fact, based on the representations made by Hurowitz and Long, Plaintiffs had every reason to expect that MHPG and Four Seasons possessed the financial wherewithal to honor their obligations to Plaintiffs upon deposit of customer payments into the specified joint checking account. *Id.*, ¶ 11.

Later in 2001, MHPG filed a baseless action in the United States District Court for the District of Massachusetts against Plaintiffs, in which Plaintiffs asserted various counterclaims against MHPG and Four Seasons for, among other things, breach of contract (the "Massachusetts Action"). *Id.*, ¶ 22. On July 31, 2001, Plaintiffs, MHPG and Four Seasons executed a settlement agreement resolving the Massachusetts Action and all unasserted claims by Plaintiffs against MHPG and Four Seasons (the "Settlement Agreement"). *Id.*, ¶ 22. Under the Settlement Agreement, MHPG and Four Seasons executed notes and guarantees and agreed to pay Plaintiffs in excess of $2.7 million. *Id.* MHPG and Four Seasons defaulted on their payment obligations

under the Settlement Agreement, and in early 2003, Plaintiffs obtained judgments against MHPG and Four Seasons, in actions filed in the Supreme Court of the State of New York, County of New York, in excess of $2.187 million (collectively, the "New York Actions").  *Id.*, ¶ 25. Plaintiffs then attempted to enforce the New York judgments against MHPG and Four Seasons by, among other things, taking the judgment debtor examinations of Hurowitz, Long and others. *Id.*, ¶ 26.  Plaintiffs' efforts to enforce the New York judgments were not successful because MHPG and Four Seasons appear to have been looted of all of their assets by Defendants.  *Id.*

In September 2005, during Hurowitz's judgment debtor examination, he testified as to MHPG's poor financial condition, both before and after the joint venture with Plaintiffs was formed.  *Id.*, ¶ 28.  Hurowitz further testified that, at the time the Settlement Agreement was entered into, MHPG was so insolvent that he wanted to place MHPG into bankruptcy.  *Id.* Moreover, as explained in the Complaint, Defendant Long would have also been aware of MHPG's poor financial health and that MHPG was on the verge of bankruptcy prior to execution of the Settlement Agreement, particularly as MHPG and Four Seasons had been merged by Defendants at that time.  *Id.*  The practical insolvency of MHPG at the time of the execution of the Settlement Agreement, on top of the concealment of the financial conditions of MHPG and Four Seasons at the time the joint venture was formed, was yet another material fact concealed from Plaintiffs by Defendants that Plaintiffs could not reasonably have discovered.  *Id.*

Hurowitz also confirmed during his examination that, at all relevant times, MHPG and Four Seasons were completely dominated and controlled by Hurowitz and Long and were not capable of making decisions independently of Defendants.  *Id.*, ¶ 31.  Hurowitz's testimony made clear that he and Long were using MHPG and Four Seasons as vehicles to conduct their own personal businesses and as instrumentalities to defraud Plaintiffs.  *Id.,* ¶ 32.  Accordingly,

MHPG and Four Seasons were mere alter-egos of Defendants, to the point that any legal obligations and responsibilities of such companies became their personal obligations.  *Id.*  This is confirmed by the fact that Defendants personally benefited from their wrongdoing, in that their liability on their guarantees of the debts of their corporations was decreased through payments made to the lenders from proceeds of sales promised to Plaintiffs.  *Id.*

## ARGUMENT

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) may be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *In re Natural Gas Commodity Litig.*, 358 F. Supp.2d 336, 341-42 (S.D.N.Y. 2005) (Marrero, J.) (citations omitted).  "The Court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party."  *Id.*  The issue on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims."  *Sultan v. Read,* No. 03 Civ. 7462, 2005 WL 486732, *3 (S.D.N.Y. Mar. 1, 2005) (citations omitted).  "Thus, a party is entitled to dismissal only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Id.* (citing C*onley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

Despite quoting this well settled legal standard, *see* Moving Brief ("Mov. Br.") at 6, Hurowitz repeatedly references facts outside of Plaintiffs' Complaint in support of his motion while simultaneously ignoring presumptively truthful allegations that are contained in that pleading.[3]  At the same time, he tries to gussy up his flawed arguments by ratcheting up the rhetorical ante through the repeated use of shrill, conclusory adjectives like "nonsensical,"

---

[3]   Hurowitz tips off his references to facts outside of Plaintiffs' Complaint by inserting the phrase "[a]lthough unnecessary for consideration of this Motion" before each wrongfully included factual allegation.  *See, e.g., Mov. Br.* at 3 n. 6, 4 n. 9.

"hypothetical" or "utter nonsense" to describe Plaintiffs' arguments.  Mov. Br. at 22-24.

Considering Hurowitz's penchant for brazenly skipping out on debts owed to parties with whom

he once did business, his inflammatory allegations are as hypocritical as they are wrongheaded.

The only "nonsense" here is Hurowitz's apparent belief that the law affords no remedy for the

blatant fraud and deceitful conduct in which he has engaged.  As shown below, Plaintiffs have

adequately stated claims for relief under New York law, meaning that there is no basis for a

dismissal under Fed. R. Civ. P. 12(b)(6).

<u>POINT I</u>

PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE
<u>RELEASE CONTAINED IN THE SETTLEMENT AGREEMENT</u>

A.       <u>The Default of MHPG and Four Seasons Renders the Release Null and Void</u>

Hurowitz's initial argument is that all of Plaintiffs' claims, with the exception of the

claim for breach of the Settlement Agreement, are barred by a release contained in that contract.

Mov. Br. at 6-7.  The principal problem with this argument is that, on its face, this release does

not apply.

As paragraph 3 of the Settlement Agreement makes clear, the release contained in that

paragraph is voidable, at the election of Plaintiffs, in the event of a default by MHPG and Four

Seasons.  The specific language of the contract is as follows:

> . . . <u>and further provided</u>, that in the Event of Default (as defined
> herein) by any Plaintiff Party [defined to include MHPG and Four
> Seasons], the terms of this agreement (including this release) may,
> at the sole discretion of Defendants, be rendered ineffective, null,
> and void, whereupon the parties shall be restored to the <u>status quo
> ante</u> this Agreement.

Settlement Agreement, paragraph 3(a) (emphasis in original)[4].  Paragraph 5 of the Settlement Agreement makes clear that a failure by MHPG and Four Seasons to honor their payment obligations qualifies as an "Event of Default," meaning that MHPG, Four Seasons and their principals (Hurowitz and Long) lost their ability to use the release as a shield against liability in this action when they failed to make the payments required by the Settlement Agreement.

Hurowitz responds by stating that Plaintiffs, rather than voiding the Settlement Agreement, elected to affirm it when they commenced the New York Actions and obtained default judgments against MHPG and Four Seasons, meaning that the release remains in effect. Mov. Br. at 8.[5]  However, this argument fails because the Settlement Agreement authorizes Plaintiffs to pursue multiple remedies simultaneously when an Event of Default has occurred.

In paragraph 5 of the Settlement Agreement, the parties agreed that "All rights and remedies hereunder are cumulative and the exercise of any one right or remedy shall not be deemed a waiver or release of any other right or remedy."  Thus, the Settlement Agreement does not limit Plaintiffs to the stark choice of either a claim for breach of that contract or the claims that it could have pursued before that Agreement was signed.  Instead, Plaintiffs were expressly given the right to pursue both types of relief in order to afford them maximum opportunity to recover the funds MHPG and Four Seasons were required to pay.  *See Lewyt-Patchogue Co. v. Cantor*, 82 A.D.2d 911, 440 N.Y.S.2d 693 (2d Dep't 1981) (where lease provided that "all

---

4    A copy of  the Settlement Agreement is attached as Exhibit A to the Declaration of Isaac S. Greaney in Support of Defendants' Motion to Dismiss.

5    Hurowitz also suggests at page 8 of his Moving Brief that Plaintiffs were somehow obliged to "declare[]" the Settlement Agreement to be "ineffective, null and void" in order to invoke the condition incorporated into the release at paragraph 3, but the Settlement Agreement says nothing to this effect.  In addition, footnote 15 of the Moving Brief contains assertions that Plaintiffs were obliged to terminate or rescind the contract "in writing and signed by the party against whom the . . . termination or rescission [sic] is to be enforced."  However, this provision is part of a general "no oral modification clause" in paragraph 8 of the Settlement Agreement that cannot be construed to trump the specific conditions applicable to the release.  Moreover, the effect of reading that clause as Hurowitz does would be to condition Plaintiffs' right of recovery in the event of a default on Hurowitz's written endorsement, an implausible construction of this provision if ever there was one.

remedies are cumulative and the exercise of one does not preclude the other," plaintiff was free to initiate multiple proceedings seeking consistent forms of relief).  It defies logic and common sense for Hurowitz to suggest, as he does, that Plaintiffs would have agreed to narrow the scope of relief available to them in the event of non-payment, and the contract on its face preserves for Plaintiffs a range of remedies to recover the benefit of their bargain in the event MHPG and Four Seasons welched on their obligations, as in fact they did.

B.      The Election-of-Remedies Doctrine Does Not Bar Plaintiffs' Claims

        Totally ignoring the provisions of paragraph 5 of the Settlement Agreement that entitle Plaintiffs to pursue multiple theories of recovery, Hurowitz argues that the election-of remedies doctrine precludes Plaintiffs from asserting their present claims against him.  However, a review of the controlling New York cases demonstrates that Hurowitz's argument borders on the frivolous.

        While Hurowitz is correct that the doctrine of election of remedies can serve as a complete defense in certain circumstances, the doctrine is subject to two critical limitations that bar its invocation here.  First, "a party must elect between two remedies only when the remedies available to a party are inconsistent or mutually exclusive."  *Siderpali, S.P.A. v. Judal Indus., Inc.*, 833 F. Supp. 1023, 1032 (S.D.N.Y. 1993).  Here, there is nothing inconsistent about Plaintiffs' decision to pursue their claims against Hurowitz and Long, in addition to pursuing recovery from MHPG and Four Seasons in the New York Actions, particularly in light of the leeway afforded by paragraph 5 of the Settlement Agreement.  Second, the election-of-remedies doctrine "has 'no application to the pursuit of remedies against parties concurrently liable, *short of payment and satisfaction*.'"  *Id.* (quoting *City of New York v. Bronx County Trust Co.*, 261 N.Y. 64, 184 N.E. 495, 498 (1933) (emphasis added)).  Here, of course, the default judgments

obtained by Plaintiffs in the New York Actions are unsatisfied.  Until that unlikely eventuality comes to pass, there is no risk that Plaintiffs will obtain duplicative or inconsistent remedies.

A case illustrating this point is *Int'l Aircraft Trading Co. v. Manufacturers Trust Co.*, 297 N.Y. 285, 290, 79 N.E.2d 249, 250 (1948).  In that case, the plaintiff contracted to purchase cartridges for export to Ecuador and issued a check to the seller in the amount of $5,000.  The seller, as it turned out, was not a legal entity, a fact of which its bank was well aware.  When the seller defaulted on the contract, resulting in a loss to plaintiff of $5,000, it sued the seller and its principals, obtaining a judgment of $5,000 that could not be satisfied.  Confronted with this, the plaintiff then sued its own bank for honoring the check, and that bank impleaded the sellers' bank, which was on notice of the fraud.  In response to the defendant bank's invocation of the defense of election of remedies, the Court held that "there was no inconsistency on plaintiff's part in proceeding first against the [seller] in an endeavor to collect from all who might be liable to it," *id.*, 297 N.Y. at 293, 79 N.E.2d at 252, and sustained the plaintiff's claims.  *See also Lumber Mutual Casualty Ins. Co. v. Friedman*, 176 Misc. 703, 704, 28 N.Y.S.2d 506 (Sup. Ct. N.Y. Co. 1941) ("It is a well-settled rule of practice that where two or more remedies for the same wrong are consistent with each other, the choice of one will not operate as a bar until there has been a satisfaction of the judgment, since there can be but one adequate compensation for the wrong done.").  Because the judgments entered in the New York Actions remain unsatisfied, and because all of the relief sought by Plaintiffs has sought the same consistent result -- payment of all amounts promised by Hurowitz and Long -- the doctrine of election of remedies has no application here.

Before turning away from this issue, there is one additional point raised by Hurowitz's opposition that requires brief comment.  At the end of his discussion on the doctrine of election

of remedies, Hurowitz has the chutzpah to chastise Plaintiffs for their imposition of "substantial burden and expense on the New York courts, on Mr. Hurowitz, and on this Court in connection with their multiple, inconsistent proceedings," Mov. Br. at 10, arguing that the purpose of the doctrine of election of remedies is to prevent "vexatious litigation." *Lumber*, 176 Misc. at 705. What Hurowitz conveniently ignores is that the only reason any litigation has occurred in any court is because he has no regard whatsoever for his contractual obligations. The only "vexatious" aspect of this case is Hurowitz's attitude that he is free to ignore the promises he makes in the contracts he signs.

<u>POINT II</u>

THE COMPLAINT STATES CLAIMS
<u>AGAINST DEFENDANTS ON AN ALTER-EGO THEORY</u>

Even Hurowitz acknowledges that his insufficient arguments premised on the release provisions of the Settlement Agreement are of no avail against Plaintiffs' claim for breach of that contract. As to that claim, he argues that the Complaint does not adequately plead claims of individual liability against him. Thus, the issue is whether the Complaint contains allegations sufficient to pierce the corporate veils of MHPG and Four Seasons to hold Hurowitz and Long individually liable for the obligations of the Settlement Agreement.

At the outset, Hurowitz argues that the issue of whether Plaintiffs have alleged facts sufficient to support an alter-ego or veil-piercing theory is governed by the laws of the states in which MHPG and Four Seasons are incorporated, namely Massachusetts and South Carolina, respectively. Mov. Br. at 12. This analysis ignores the fact that "[a]s the forum state, New York's choice of law principles would determine the applicable law, and under those rules New York law would govern the resolution of the dispute where . . . New York has the greatest interest in the litigation." *In re Adler, Coleman Clearing Corp.*, 399 F. Supp. 2d 486, 491

11

(S.D.N.Y. 2005).  Plaintiffs submit that New York has the greatest interest in the outcome of this litigation for a number of reasons, including, *inter alia,* that the parties specified in the Settlement Agreement that New York law would govern this action, Settlement Agreement, ¶ 9; the Settlement Agreement was executed in New York, Complaint, ¶ 23; and default judgments against MHPG and Four Seasons with respect to their breach of the Settlement Agreement were entered in the New York Actions.  *Id.*, ¶ 25.

However, this esoteric legal question is largely of no moment because Plaintiffs' alter-ego theory is adequately pleaded, whether analyzed under the laws of Massachusetts, South Carolina or New York.  Moreover, under the federal pleading standards that govern in this District, a claim for alter-ego liability generally turns on the particular facts of each case and is usually not susceptible to resolution on a motion to dismiss.  *See WM Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 933 F.2d 131, 139 (2d Cir. 1991) (issue of whether to disregard corporate form should be decided by jury); *Moses v. Martin*, 360 F. Supp.2d 533, 540-41 (S.D.N.Y. 2004) (denying motion to dismiss claims premised on alter-ego theory); *Grunblatt v. Unumprovident Corp.*, 270 F. Supp.2d 347, 352 (E.D.N.Y. 2003) (same).

A.      The Complaint States a Claim of Alter-Ego Liability Under New York Law

In *Morris v. New York State Dep't of Taxation and Finance*, 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807, 810-11 (1993), the New York Court of Appeals articulated a two-prong standard for alter-ego liability, explaining that such a claim requires proof that: "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury."  82 N.Y.2d at 141, 603 N.Y.S.2d at 810-11.  Plaintiffs have alleged facts in the Complaint sufficient to satisfy both prongs of this standard.

1.    Defendants Exercised Domination and
Control over MHPG and Four Seasons

To satisfy the first prong of the standard, a plaintiff must plead the individual's domination of the corporate form.  *See Moses,* 360 F. Supp.2d at 540-41.  Courts in this District consider a litany of factors that the Second Circuit has outlined to determine whether there is sufficient domination of a corporation, including, *inter alia*: (i) whether funds are put in and taken out of the corporation for personal rather than corporate purposes; (ii) overlap in ownership, officers, directors, and personnel; (iii) the amount of business discretion displayed by the allegedly dominated corporation; (iv) whether the corporation in question had property that was used by the individual as if it were its own; (v) the payment or guarantee of debts of the dominated corporation by other corporations in the group; (vi) inadequate capitalization; and (vii) whether the corporation in question had property that was used by other of the corporations as if it were its own.  *See WM Passalacqua*, 933 F.2d at 139 (listing ten factors); *In re Adler,* 399 F. Supp.2d at 491 (listing six factors).  Here, Plaintiffs have pleaded the following specific facts establishing that Hurowitz and Long exercised complete domination over MHPG and Four Seasons in disregard of the corporate form, including:

- Hurowitz and Long were the majority shareholders of MHPG and Four Seasons, respectively, which were, at all times, operated jointly by them with respect to their dealings with Plaintiffs.  Complaint, ¶¶ 7, 8.

- At some point prior to or during their dealings with Plaintiffs, MHPG and Four Seasons were merged by Defendants, who later made efforts to undo such merger.  *Id.*, ¶ 8.

- MHPG and Four Seasons were maintained without adequate capitalization and heavily in debt.  *Id.*, ¶¶ 21, 32.

- Hurowitz and Long personally guaranteed the more than $6 million in debts of MHPG and Four Seasons.  *Id.*, ¶¶16-18.

- Proceeds of the sales of goods shipped to MHPG and Four Seasons were used by Hurowitz and Long to pay down the lines of credit personally guaranteed by them. *Id.*, ¶¶ 21, 32.

- At all relevant times, MHPG and Four Seasons were completely dominated and controlled by Defendants and were not capable of making decisions independently of them. *Id.*, ¶ 31.

- At all relevant times, on information and belief, Defendants used MHPG and Four Seasons as vehicles to conduct their own personal businesses and as instrumentalities to defraud Plaintiffs. *Id.*, ¶ 32.

At this stage of the proceedings, where the only issue is whether these allegations are sufficient to state a claim for relief that passes muster under Fed. R. Civ. P. 12(b)(6), the Complaint plainly satisfies the first prong of the *Morris* standard.

2.    Defendants Used Their Domination and Control
over MHPG and Four Seasons to Perpetrate Wrongs Against Plaintiffs

Plaintiffs have also set forth particularized allegations supporting the second prong of the *Morris* test.  "Under the second prong, plaintiff must allege facts sufficient to establish that defendants 'misused the corporate form for [their] personal ends so as to commit a wrong or injustice against'" it.  *Alter v. Bogoricin*, No. 97-CIV. 0662 (MBM), 1997 WL 691332, at *5 (S.D.N.Y. Nov. 6, 1997).  Here, the Complaint includes specific allegations that Hurowitz and Long used MHPG and Four Seasons as vehicles through which to defraud Plaintiffs, encouraging them to enter into the joint venture and supply goods, the proceeds of which would be used to pay creditors of Hurowitz and Long.  Complaint, ¶ 32.  Hurowitz and Long initiated the relationship with Plaintiffs, *id.,* ¶ 9, encouraged Plaintiffs to manufacture and supply goods pursuant to the proposed joint venture, *id.*, ¶ 10, further encouraged Plaintiffs to continue to supply goods despite nonpayment by falsely representing that payment problems were temporary, *id.*, ¶¶ 14-15, and used the proceeds of the sale of Plaintiffs' goods to pay their own

debts rather than paying Plaintiffs.  *Id.*, ¶¶ 15-18.  In addition, the Complaint includes the following specific allegations:

- Defendants personally benefited from the wrongdoing alleged in the complaint, because their liability on their personal guarantees of the debts of their corporations was decreased through payments made to the lenders from proceeds of sales of merchandise manufactured and shipped by Plaintiffs.  *Id.*, ¶ 32.

- Based on further information and belief, after Defendants looted the assets of MHPG and Four Seasons, some of such assets and corporate opportunities of those companies were transferred to other corporations in order to avoid the reach of creditors.  *Id.*, ¶ 33.

In short, Defendants were personally responsible for encouraging Plaintiffs to participate in a sham joint venture meant to do no more than satisfy lenders to whom Hurowitz and Long had personally guaranteed debts, and, five years later, Plaintiffs are still owed more than two million dollars for the goods supplied as part of that venture and have spent significant time and money attempting to recover payment on those obligations.

3.    Plaintiffs' Allegations Are Not Conclusory

Hurowitz argues at various points in his motion that Plaintiffs' alter-ego theory of liability has been pleaded in conclusory fashion, and he relies on the general proposition that conclusory allegations are generally insufficient to state such a claim.  Mov. Br. at 11.  However, the cases upon which Hurowitz relies, and the pleadings at issue therein, were far less fulsome than the Complaint in this action.  Thus, while there can be no dispute that conclusory allegations of alter-ego liability are often insufficient, that principle has no application here because Plaintiffs' allegations are not conclusory.

The proof of this lies in the cases on which Hurowitz relies.  For instance, in *Lovely Peoples Fashion, Inc. v. Magna Fabrics, Inc.*, No. 95 Civ. 8450 AGS, 1996 WL 732634 at *5

(S.D.N.Y. Dec. 19, 1996), the entirety of the allegations underlying the claim of alter-ego

liability consisted of the following:

> [u]pon information and belief, the Finks are officers, directors and
> stockholders of each of the Magna defendants and control and
> operate the same as their alter egos for the benefit of themselves
> and their families.

*Lovely,* 1996 WL 732634 at * 5.  Plainly, there is vast difference between this one-sentence

allegation and the chronicle of specific facts set forth in Plaintiffs' Complaint.  The alter-ego

claim at issue in *Posner v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 469 F. Supp. 972, 985

(S.D.N.Y. 1979), was similarly supported by only a single, terse paragraph of the complaint, a

far cry from the pleading at issue here.

      In *RNB Garments Philippines, Inc. v. Lau,* No. 98 Civ. 4561 (DLC), 1999 WL 223153, at

* 3-5 (S.D.N.Y. Apr. 1999), the court granted a motion to dismiss on the issue of alter-ego

liability solely because the complaint lacked allegations that the defendant's control over the

corporation at issue was used to perpetrate a wrong against the plaintiff.  The Complaint here not

only contains such allegations, but it explains the factual basis for them.  Complaint, ¶¶ 15-34.

As for *EED Holdings v. Palmer Johnson Acquisition Corp*., 228 F.R.D. 508, 511-12 (S.D.N.Y.

2005), the complaint in that action was dismissed because there was no nexus between the

alleged undercapitalization of the company at issue and the defendant's wrongful conduct

(failure to build a yacht in accordance with contractual specifications).  Here, the nexus between

the dominance of Hurowitz and Long over MHPG and Four Seasons and the transfer of

corporate assets to help Hurowitz and Long avoid personal liability for loans at Plaintiffs'

expense, is self-evident.

      "Where, as here, an undercapitalized corporation is unable to pay a judgment debt and

there has been 'disregard of corporate formalities and personal use of corporate funds . . . [there

16

is] sufficient evidence of wrongdoing to justify piercing the corporate veil." *Rotella v. Derner*, 283 A.D.2d 1026, 1027, 723 N.Y.S.2d 801, 802 (4th Dep't 2001) (quoting *Austin Powder Co. v. McCullough*, 216 A.D.2d 825, 826, 628 N.Y.S.2d 855 (3d Dep't 1995); *see also Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1544 (9th Cir. 1988) (undercapitalization of corporation is alone sufficient to pierce corporate veil).  Here, MHPG and Four Seasons were so severely undercapitalized that the companies were working under a lockbox arrangement that diverted all of the income from the sale of Plaintiffs' merchandise, from which Plaintiffs' invoices should have been paid, to other creditors, notably the bank that had made the loans Defendants personally guaranteed.  At a minimum, then, Plaintiffs have pleaded sufficient allegations to pierce the corporate veil.

B.      The Complaint States a Claim of Alter-Ego Liability Under Massachusetts Law

        In *Evans v. Multicon Construction Corp.*, 574 N.E.2d 395, 398 (Mass. App. Ct. 1991), the court identified two circumstances in which the corporate form may be disregarded:

> (1) there is active and pervasive control of related business entities by the same controlling persons *and* there is a fraudulent or injurious consequence by reason of the relationship among those business entities; or (2) there is 'a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporation and their respective representatives are acting.

*Id.* at 398 (emphasis in original) (internal quotations omitted).  The first of these is virtually identical to the two-prong standard articulated in *Morris*, requiring both control and fraudulent or injurious consequence.[6]  Thus, to the extent the *Morris* test is satisfied, so is this one.

---

6      Hurowitz's suggestion that there is some additional requirement of "gross inequity" under Massachusetts law is not supported by the cases he cites.  In fact, in *Evans,* the court explained that "gross inequity" exists when one of the two circumstances in which the corporate form may be disregarded is found to be present.  *Id.*, 574 N.E.2d at 398.

As for the second *Evans* scenario, the court in that decision articulated a twelve-factor test set forth accurately at footnote 18 of Hurowitz's Moving Brief but inaccurately described as requiring Plaintiffs to establish all twelve of these factors in order to prevail on a claim of alter-ego liability.  In fact, as *Evans* makes clear, these factors are to be weighed to determine if equity requires disregarding the corporate form.  *Id.*, 574 N.E.2d at 400.

Many of the *Evans* factors are identical to those articulated in *Morris*, and the end result of both tests is the same.  Here, the Complaint contains specific allegations of ownership, pervasive control, intermingling of assets and debts, thin capitalization, insolvency at the time of the litigated transaction (where such insolvency was concealed during the underlying transactions), siphoning away of corporate assets by Defendants, and use of the corporations in promoting fraud.  Complaint, ¶¶ 15-34.  Defendants' contrary arguments ignore the Complaint.

C.    The Complaint States a Claim of Alter-Ego Liability Under South Carolina Law

Finally, looking at the cases upon which Hurowitz relies, the standard applied under South Carolina law in assessing claims of alter-ego liability is also not materially different from that of New York, and the end-result of the application of that standard is the same.  *Hunting v. Ellis*, 597 S.E.2d 803, 806 (S.C. Ct. App. 2004).  As a consequence, there is no basis to dismiss Plaintiffs' claims of alter-ego liability under any conceivably applicable law.

POINT III

THE COMPLAINT STATES CLAIMS FOR FRAUD,
BREACH OF FIDUCIARY DUTY, UNJUST ENRICHMENT

A.    The Complaint States a Claim for Fraud

With respect to Plaintiffs' claim for fraud, Hurowitz argues that the Court should dismiss this claim because: (i) it is duplicative of Plaintiffs' claim for breach of contract; and (ii) the claim violates Fed. R. Civ. P. 9(b).  As explained below, both of these arguments fail.

18

       1.     Plaintiffs' Claim for Fraud
              <u>Is Not Duplicative of Their Claim for Breach of Contract</u>

Hurowitz argues that New York does not allow a plaintiff to premise a claim of fraud on allegations that the defendant never intended to honor its contractual obligations, Mov. Br. at 18-20, and that Plaintiffs' fraud claim is essentially a rehash of their claim for breach of contract. *See Bridgestone/Firestone v. Recovery Credit Servs.,* 98 F.3d 13, 19 (2d Cir. 1996). However, the doctrine upon which Hurowitz relies is subject to multiple qualifications, none of which he bothers to mention, that establish the propriety of Plaintiffs' fraud claim.

In this Circuit, a fraud claim may survive alongside a breach of contract claim where the fraud claim is sufficiently distinguishable, such as when plaintiff is able to "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages. . . ." *Bridgestone/ Firestone,* 98 F.3d at 22 (citations omitted); *see also Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir. 1994) ("a valid fraud claim may be premised on misrepresentations that were made before the formation of the contract and that induced the plaintiff to enter the contract"); *Sultan,* 2005 WL 486732 at *3 ("a properly pled fraudulent inducement claim should be based upon a misrepresentation of present fact that, though collateral to the contract, served as the inducement for the contract."). Similarly, a claim of fraud based on misrepresentation of present fact, rather than of future intent, is properly pleaded if the present fact is sufficiently collateral to the agreement and acts as the inducement for the contract. *See, e.g., Deerfield Communications Corp. v. Chesebrough-Ponds, Inc.* 68 N.Y.2d 954, 502 N.E.2d 1003 (1986) (cited with approval in *Bridgestone/Firestone,* 98 F.3d at 20; *Pfizer, Inc. v. Stryker Corp.*, No. 02 Civ. 8613 (LAK), 2003 WL 21660339 (S.D.N.Y. Jul. 15, 2003) ("Where, as here, a party warrants and represents a

present existing fact, there simply is no reason why it should not have a remedy in contract for breach of the warranty and a remedy in tort for deliberate, fraudulent misrepresentations.").

The allegations pleaded in the Complaint place this case squarely within the broad exception established by the cases cited above. The gravamen of Plaintiffs' fraud claim is that Hurowitz and Long, on repeated occasions after September 2001, concealed from Plaintiffs the fact MHPG and Four Seasons were insolvent as a practical matter, were incapable of honoring the obligations they had undertaken to Plaintiffs and had entered into a lockbox arrangement that ensured the diversion of the proceeds of the sales of Plaintiffs' goods to other creditors, and made affirmative misrepresentations to the contrary. Complaint, ¶¶ 36-42. As a consequence of this wrongful conduct, Plaintiffs were first induced to enter into a joint venture agreement with MHPG and Four Seasons, and then to enter into the Settlement Agreement, actions that resulted in substantial damage to Plaintiffs. *Id.* Such allegations are sufficient to state a valid claim of fraud. *See Sultan*, 2005 WL 486732 at *3; *see also Turnbull v. Kling,* No. 98 Civ. 5925, 1999 WL 672561, *6 (S.D.N.Y. Aug. 26, 1999) (refusing to dismiss claims of fraudulent inducement based on allegations known by the defendant to be false when made and intended to induce the plaintiff to enter into an employment agreement and not to terminate the employment relationship); *Bradbury v. PTN Publications, Inc.*, No. 93-CV-5521, 1998 WL 386485, *6 (E.D.N.Y. Jul. 8, 1998) (refusing to dismiss counterclaim for fraudulent inducement where plaintiff alleged that the counterclaim defendant "deliberately misrepresented KBC's financial situation in order to inflate the purchase price and to induce PTN to hire Bradbury as publisher").

As the Second Circuit stated in *Cohen*, a "relatively concrete representation as to a company's future performance, if made at a time when the speaker knows that the represented level of performance cannot be achieved, may ground a claim of fraud." *Cohen*, 25 F.3d at 1172.

20

Here, Hurowitz and Long assured Plaintiffs that the amounts earned on sales of the goods

manufactured by Plaintiffs and sold to MHPG and Four Seasons were more than sufficient to

satisfy the obligations owed to Plaintiffs, and represented that the two companies had the

financial wherewithal to honor their obligations, never mentioning that the funds at issue had

been pledged to the companies' lenders or that their financial condition was dire.  Complaint,

¶¶ 36-42.  In these circumstances, Plaintiffs' claim of fraud is sufficiently independent of their

claim for breach of contract to withstand this motion to dismiss.

<blockquote>

2.    Plaintiffs' Fraud Claim Satisfies
      <u>Fed. R. Civ. P. 9(b) and Is Otherwise Adequately Pleaded</u>

</blockquote>

To state a claim for fraudulent inducement under New York law, a plaintiff must allege

either: (i) a misrepresentation of a present fact, falsity, *scienter*, reliance and damage; or

(ii) concealment of a material fact notwithstanding a duty of disclosure, scienter, reliance and

damages.  *See Allied Irish Banks, P.L.C. v. Bank of Amer., N.A.,* No. 03 Civ. 3748 (DAB), 2006

WL 278138, *6 (S.D.N.Y. Feb. 2, 2006); *Doehla v. Wathne Limited, Inc.,* No. 98 Civ. 6087

(CSH), 1999 WL 566311, *9 (S.D.N.Y. Aug. 3, 1999).  Defendants argue that the Complaint's

allegations with respect to misrepresentations, duty of disclosure, *scienter* and reliance are

deficient substantively and also in light of Fed. R. Civ. P. 9(b).

With respect to the issue of misrepresentations, Defendants contend that the Complaint is

insufficiently detailed as to the "time, place, recipient or content of these alleged statements,"

Mov. Br. at 17, and therefore violative of Fed. R. Civ. P. 9(b).[7]  However, the Complaint

specifies the content of the misrepresentations made by Defendants, Complaint, ¶¶ 13-20, and

the time period in which the misrepresentations were made, *id.*, ¶ 13, and further detail is not

---

[7]    The Complaint was originally filed in the Supreme Court of the State of New York, New York County, where
Rule 9(b) is obviously inapplicable, and removed to this Court by Defendants.  To the extent the Court believes
the Complaint does not comply with Fed. R. Civ. P. 9(b), Plaintiffs seek leave to amend to cure any deficiencies
the Court identifies.  *See In re Natural Gas Commodity Litigation*, 337 F. Supp.2d at 522.

necessary to give Defendants notice of the claims against them.  *See* A*llied Irish Banks,* 2006 WL 278138 at *6 (complaint need not specify each of thousands of misrepresentations).

   With respect to the issue of *scienter*, allegations of "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally."  *Cohen*, 25 F.3d at 1173.  Such allegations need only be supported by facts "giving rise to a strong inference that the defendant knew the statements to be false and intended to defraud the plaintiff' at the time they were made."  *United States Fire Insur. Co. v. United Limousine Service Inc.*, 303 F. Supp. 2d 432, 444 (S.D.N.Y. 2004).  A "strong inference" of fraudulent intent may be established "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Turnbull*, 1999 WL 672561 at *7.  Here, the Complaint recites that Hurowitz and Long lied to Plaintiffs about the financial wherewithal of their companies and the joint venture and affirmatively concealed the massive debts they owed to their lenders.  Complaint, ¶¶ 14-18. (Hurowitz implies in his Moving Brief at page 18 that these lies were "misguided optimism," but no degree of spin can swing this issue his way, especially on a motion where Plaintiffs must be given the benefit of every favorable inference.)  The Complaint also makes clear that Hurowitz and Long engaged in this misconduct so that they could induce Plaintiffs to ship goods to the U.S. for sale, with the proceeds going to pay off loans personally guaranteed by Hurowitz and Long so that they could avoid personal liability.  *Id.*, ¶¶ 19-20.  Defendants never told Plaintiffs that the proceeds from the sales of the goods they supplied were being diverted to a lockbox, a fact that, by itself, would have caused Plaintiffs to pull the plug on additional sales to MHPG and

Four Seasons.  *Id*, ¶¶ 16-18.  With motive and opportunity adequately pleaded, the element of *scienter* is also necessarily present.[8]

The only remaining argument made by Defendant is that Plaintiffs have not alleged reasonable reliance, but their argument is essentially that Plaintiffs should have known better before shipping $2 million of garments to the U.S. and signing the Settlement Agreement.  Mov. Br. at 22.  As Defendants' own cases note, "[t]he question of what constitutes reasonable reliance is always nettlesome because it is so fact-intensive."  *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997).  As a consequence, this issue is particularly unsuitable for resolution on a motion to dismiss, as shown by the fact that all of Defendants' cases cited on the issue of reasonable reliance at pp. 22-24 of the Moving Brief involved motions for summary judgment, some of which failed, *see J.P. Morgan Chase Bank v. Winnick*, 350 F. Supp.2d 393, 406 (S.D.N.Y. 2004), or decisions after trial, s*ee Allied Irish Banks, P.L.C.,* 2006 WL 278138 at *8; *Doehla,* 1999 WL 566311 at *18.  Here, the Complaint alleges that Plaintiffs did not know and could not have known of the poor financial conditions of MHPG and Four Seasons, the lending arrangements they had entered into or the personal guarantees of Hurowitz and Long, Complaint, ¶ 21, nor is there any indication in the Complaint that Plaintiffs should have been on notice of such facts.  Even as late as the date of execution of the Settlement Agreement, after months of difficulty and litigation between the parties, there is nothing in the present record to

---

8    At pages 23-24 of his Moving Brief, Hurowitz goes to elaborate lengths to ridicule the allegations of the Complaint as they bear on the issue of *scienter*, claiming that Plaintiffs' allegations are somehow senseless and "bizarre."  But his scheme is all too easy to summarize.  Hurowitz and Long were in hock up to their ears with their lenders and needed goods to sell to generate revenue to pay back the loans they had personally guaranteed. They identified Plaintiffs as potential revenue sources and strung them along for months to extract as much money as possible from the sale of goods Plaintiffs kept shipping.  When Plaintiffs began to catch on to the fact that they were being had, Defendants took the initiative by filing the Massachusetts Action that resulted in a settlement that enabled them to get away with paying off only a small portion of the amounts they owed before they shut down their two businesses.  Complaint, ¶¶ 15-34.  By and large, Hurowitz's and Long's scheme has worked to date, as they have managed to avoid personal liability while sticking Plaintiffs with more than $2 million in debts.  If that is not sufficient motive for a fraudulent scheme, one wonders what would be.

suggest that Plaintiffs knew or should have known of the likely inability of MHPG and Four Seasons to live up to their financial commitments (as opposed to their prior unwillingness to pay because of bogus claims of deficiencies in performance on the part of Plaintiffs).

B.    The Complaint States a Claim for Unjust Enrichment

To state a claim of unjust enrichment under New York law, Plaintiffs must show "(1) that defendant benefited; (2) at plaintiff's expense; and (3) that 'equity and good conscience' require restitution." *Sultan*, 2005 WL 486732 at *5. Hurowitz's argument with respect to Plaintiffs' unjust enrichment claim is limited to a footnote on page 20 of his Moving Brief, in which he argues that the unjust enrichment claim is duplicative of Plaintiffs' breach of contract claim. However, while it is generally true that there is no claim for unjust enrichment where the subject matter of the claim is covered by a written contract, such claims are generally allowed to proceed where there is either a dispute over the existence of a contract or what that contract covers. *See Fisher v. A.W. Miller Tech. Sales, Inc.*, 306 A.D.2d 829, 831, 762 N.Y.S.2d 205, 207 (4th Dep't 2003); *Mathias v. Jacobs*, 238 F. Supp.2d 556, 571-72 (S.D.N.Y. 2002) (Marrero, J.). Here, Hurowitz denies that he is a party to any of the contracts at issue and insists that he is not obliged to return any of the funds used to pay off debts he personally guaranteed. In these circumstances, there is no basis for the Court to dismiss the unjust enrichment claim.

C.    The Complaint States a Claim for Breach of Fiduciary Duty

The sole basis for dismissal of Plaintiffs' breach of fiduciary duty claim is set forth at footnote 22 of the Moving Brief, in which Defendants argue that Plaintiffs have failed to allege the existence of a fiduciary relationship between Hurowitz and Plaintiffs. However, the Complaint states at paragraph 50 that "Defendants owed Plaintiffs a fiduciary duty as a result of the joint venture agreement entered into by the parties. Defendants breached their fiduciary duties to Plaintiffs as a result of their wrongdoing alleged above." It is crystal-clear under New

York law that joint venturers owe fiduciary duties to each other, and equally clear that individual officers of a joint venture, like officers of any corporate venture, owe fiduciary obligations to the venture. *See Meinard v. Salmon,* 249 N.Y. 458, 462, 164 N.E. 545, 546 (1928); *Blue Chip Emerald LLC v. Allied Partners Inc.,* 299 A.D.2d 278, 279, 750 N.Y.S.2d 291, 294 (1st Dept. 2002); *Solutia, Inc. v. FMC Corp.*, 385 F. Supp.2d 324, 341 (S.D.N.Y. 2005). As a result, there is no basis for the dismissal of Plaintiffs' claim for breach of fiduciary duty.[9]

## **CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully submits that the Court should deny Defendants' motion to dismiss the Complaint in its entirety.

Dated: March 13, 2006                                    DORSEY & WHITNEY LLP


By:      Bruce R. Ewing /s
         Bruce R. Ewing (BE-0724)
         250 Park Avenue
         New York, New York 10177
         (212) 415-9200

         Juan C. Basombrio (pro hac vice)
         38 Technology Drive
         Irvine, California 92618
         (949) 932-3600

         Attorneys for Plaintiffs
         *Sofi Classic, S.A. de C.V. and Grupo*
         *Industrial Miro, S.A. de C.V.*

---

[9]   With respect to Plaintiffs' fifth claim for declaratory relief, Plaintiffs agree that the relief sought on such claim is subsumed within the relief sought on the other four claims, such that if the motion is denied as to those four, the entry of declaratory relief is unnecessary.